**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SERVICE REMINDER, LLC,

    Plaintiff and Counter-Defendant,

v.

VOLKSWAGEN GROUP OF AMERICA, INC.,

    Defendant and Counter-Plaintiff.
_____/

Case No. 10-12201

HONORABLE DENISE PAGE HOOD

**OPINION AND ORDER REGARDING CLAIMS CONSTRUCTION,**
**GRANTING MOTION FOR SUMMARY JUDGMENT,**
**DISMISSING COMPLAINT and ENTERING JUDGMENT ON COUNTERCLAIM**

**I.  BACKGROUND**

Plaintiff Service Reminder LLC ("Service Reminder") filed the instant action against Defendant Volkswagen Group of America, Inc. ("Volkswagen") alleging that Volkswagen infringed on Service Reminder's U.S. Patent No. 5,917,408 (the '408 patent). Volkswagen filed a Counterclaim seeking a declaration of no infringement and invalidity.

The '408 patent was issued on June 29, 1999 to Alfred Cardillo and Peter Michael Doerr, entitled "Maintenance Alert Cluster With Memory." The '408 patent was assigned to ProDesign Technology, Inc. and later licensed to Service Reminder. The '408 patent is directed towards a device having a processor and a memory. The processor monitors various parts and systems to determine if they are operating properly by comparing the parts and systems to maintenance rules that are programmed into the vehicle's memory. The device generates a maintenance alert if the processor determines that a party or system is operating in violation of a maintenance rule for longer

than an allowable period of operating time. The device generates visual or audible alerts. Service Reminder alleges that Volkswagen's systems infringe the '408 patent.

This matter is before the Court on a claims construction hearing and a summary judgment motion based on invalidity filed by Volkswagen. The parties have fully briefed the matter and a hearing was held.

## II. CLAIM CONSTRUCTION

### A. Standard of Review

A determination of infringement requires a two-step analysis. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476, 45 U.S.P.Q.2d 1498, 1500 (Fed. Cir. 998). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.* Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 388-90 (1996). In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 U.S.P.Q.2d 1573, 1577 (Fed. Cir. 1996). Absent an express intent to impart a novel meaning, "terms in a claim are to be given their ordinary and accustomed meaning." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1249, 48 U.S.P.Q.2d 1117, 1121 (Fed. Cir. 1998). It is the claims that measure the invention. *SRI Int'l Inc. v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985).

The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Vitronics,* 90 F.3d at 1582. Although the specification often describes very specific embodiments of the invention, the Federal Circuit has repeatedly warned

against confining the claims to those embodiments. *Phillips v. AWH,* 415 F.3d 1303, 1312 (Fed. Cir. 2005). Claims of a patent are not limited to a preferred embodiment described in the specification. *Id.* at 1323. The specification is always highly relevant to the claim construction analysis and the single best guide to the meaning of a disputed term. *Id.* at 1315. The specification should not be used to narrow the ordinary and customary meaning of a claim term unless there is a clear disavowal of the full scope of the claim term or the term has been explicitly defined in a manner inconsistent with its ordinary meaning. *See Home Diagnostics, Inc. v. LifeScan, Inc.,* 381 F.3d 1352, 1355, 1357 (Fed. Cir. 2004).

If the intrinsic evidence alone will resolve any ambiguity on a disputed claim term, then it is improper to rely on extrinsic evidence. Anything outside of the intrinsic evidence (patent itself, the specification, the file history) is extrinsic evidence. *See, Vitronics*, 90 F.3d at 1576, 1582. The interpretation of patent claims is more a legal than a factual determination and is to be made by judges rather than juries. *Markman*, 517 U.S. at 388-90. The court must construe the terms of art forming parts of the claim. *Framson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 219 U.S.P.Q. 1137, 1142 (Fed. Cir. 1983). While words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is stated in the patent specification or file history. *Vitronics,* 90 F.3d at 1576. The established rules of claim construction include a prohibition against reading extraneous limitations into the claims which are not present. *Renishaw,* 158 F.3d at 1249. Limitations appearing in a claim cannot be ignored. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997). Extrinsic evidence may only be considered if the terms cannot be construed from intrinsic evidence. An accused device has no place

in the claim construction protocol. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). Finally, courts do not redraft claims. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1996).

### B. Disputed language

The disputed language in this suit is contained in claim 1 of the '408 patent which states in its entirety:

> 1. A device for alerting one to perform a preventative maintenance task on a mobile and immobile object in order to extend the life-span thereof, said device comprising:
>
> > a housing for containing components associated with the device;
> >
> > a processor for performing a predetermined set of functions and monitoring operation of the object;
> >
> > a memory connected to the processor for storing information relating to the mobile and immobile object and for storing a plurality of maintenance rules defining a predetermined event;
> >
> > a wiring harness for connecting the processor to a plurality of signal sources, wherein at least one of the signal sources provides a signal which can be monitored by the processor for determining *a period of continuous time in which the object has been operating*;
> >
> > said processor including an input port for receiving mileage information generated by an odometer; and
> >
> > an input/output port for transferring information to and from the device;
> >
> > whereby the processor continually applies the maintenance rules against *the period of continuous operating time* and the mileage information for generating a maintenance alert signal upon the occurrence of the predetermined event.

( '408 patent, claim 1 (italics added)). The term "a period of continuous time which the object has

been operating" and the related term, "the period of continuous operating time," are in dispute.

### C. Interpretation

Service Reminder's construction of the disputed language is: "cumulative or non-cumulative time that has elapsed from the time the vehicle ignition is turned on until it is turned off." Volkswagen's proposed definition is "the period of continuous time in which the vehicle has been running (i.e., elapsed engine hours or running time of the vehicle) and/or the elapsed time between maintenance events regardless of whether the vehicle is running (i.e., calendar time)." Both parties rely on intrinsic evidence to support their respective definition.

Service Reminder argues that the claim term "continuous operating time" subsumes "operating time" which is the time the vehicle engine has been operating. Service Reminder claims that "continuous operating time" does not include "calendar time" as argued by Volkswagen. Service Reminder seeks a term construction that "operating time" is limited to engine running time only. Service Reminder argues that nowhere in the specification or prosecution history of the '408 patent did the patentees indicate that "continuous operating time" included "calendar time." Service Reminder argues that even though the specification notes an alert system to change the oil every three months, there is no mention of "calendar time" in the claim language. Service Reminder claims that just because the specification discloses an embodiment in which calendar time is used does not mean that the claims include that embodiment. Service Reminder asserts that the patentees did not claim all that was disclosed in the specification.

Volkswagen argues that "operating time" is not so narrow under the "ordinary and customary meaning" of "operating time." Volkswagen claims that "operating time" also encompasses "calendar time" regardless of whether the engine is running. Volkswagen gives an example of a

machine in use on a factory floor where a person of ordinary skill in the art would say that, "This machine has been *operating* for six months since its last maintenance check-up," even if the machine were regularly powered off at night and on weekends. Volkswagen claims that the specification of the '408 patent confirms its construction. The specification states that information relating to vehicle operating hours is received through a wiring harness 22, which includes an ignition lead 24 and battery lead 26 and that this information can be used for calculating the period of continues time in which the vehicle has been running. The specification further states that the system calculates the elapsed time during maintenance events regardless of whether the vehicle is running and that the system can alert the operator to change the engine oil every three months, regardless of the miles the vehicle has traveled.

Volkswagen further argues that Service Reminder's construction of the claim is inconsistent with the prosecution history. The inventors originally presented claim 1 as a maintenance alert device having a wiring harness for connecting the processor to a plurality of signal sources. The patent examiner rejected this claim as anticipated by a prior-art patent. Claim 1 was then revised by the inventors to require a signal from the wiring harness "which can be monitored by the processor for determining a period of continuous time in which the object has been operating," as well as a processor to "continually appl[y] the maintenance rules against the period of continuous operating time." (Prosecution History, p. 70) The inventors described the rewritten claim as a service alert device that "monitors vehicle mileage, and elapsed periods of time, including total time between maintenance events and elapsed engine hours. (*Id.,* p. 70) Volkswagen asserts that its interpretation is broad enough to encompass two alternative functions disclosed in the specification and Service Reminder's narrow proposed construction is improper and should be rejected.

6

After reviewing the parties' arguments, the terms used in claim 1, the specification and prosecution history, the Court constructs the claim terms, "a period of continuous time in which the object has been operating" and "the period of continuous operating time" as proposed by Service Reminder: "the cumulative or non-cumulative period of time that has elapsed from the time the vehicle ignition is turned on until it is turned off."

The specification details the preferred embodiments of the '408 patent noting, for example, that within the trucking industry, many of the vehicles are custom ordered with various independent systems. ('408 patent, col. 2, lines 66-67)  The '408 patent embodiment is to be able to track a diverse fleet of custom-ordered vehicles with a large variety of replacement parts. ('408 patent, col. 3, lines 11-13)  The terms "operation" and "continuous" in the specification is found in column 3 which states, "[i]n *operation*, ignition lead 24 provides the appropriate signal to the system for determining whether the vehicle is on or off.  Thus, this signal can be used for calculating the period of *continuous* time in which the vehicle has been running."  ('408 patent, col. 3, lines 5)(italics added).  The specification's use of the term "operation" and "continuous" relates to whether the vehicle is turned on or off.

Volkswagen's proposed construction of the term "operating" and "continuous" is to include a calendar time when the vehicle is not running or the engine is not turned on.  Volkswagen likens the terms to a device on a factory floor when a specific device has been used, including when the device is turned off.  The term "operation" could include Volkswagen's construction but such an interpretation would not be useful in assessing whether such a device is in need of maintenance since the common use of the term "operation" is when a device is being used or is on.  However, the specification does not mention calendar time.  The reference in the specification to the vehicle

running would be rendered meaningless if calendar time were to be read into the disputed claim language. Although the specification mentions that the system can alert the operator to change the engine oil every three months, regardless of the miles the vehicle has traveled in column 3, lines 57-59, a claim need not include all of the embodiment in the specification. If all the embodiments in the specification were to be read into the claims, then the claim language would not be required. The specification is not to be used to narrow the ordinary and customary meaning of a claim term unless there is a clear disavowal of the full scope of the claim term or the term has been explicitly defined in a manner inconsistent with its ordinary meaning. *See Home Diagnostics,* 381 F.3d at 1357. The Court adopts Service Reminder's construction of the claim.

### III. SUMMARY JUDGMENT BASED ON INVALIDITY

Volkswagen moves for summary judgment of invalidity based on anticipation by prior art. Service Reminder responds that the evidence shows that none of the prior art reverences upon which Volkswagen relies includes each and every limitation of the claims in issue, therefore the prior art does not anticipate the claims as a matter of law.

#### A. Summary Judgment Standard

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the

nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.  Invalidity based on Anticipation

#### 1.  Law

A patent enjoys a presumption of validity, which can be overcome only through clear and convincing evidence. 35 U.S.C. § 282. Invalidity must be established by facts supported by clear and convincing evidence. *National Presto Indus. v. West Bend Co.,* 76 F.3d 1185, 1189 (Fed. Cir. 1996). "Anticipation under 35 U.S.C. § 102(b) requires the presence in a single prior art disclosure of each and every element of a claimed invention" and involves findings based on facts. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1052 (Fed. Cir. 1994)(citation omitted). Under 35 U.S.C. § 102(b), a patent is invalid if the purported invention it describes was in public use and on sale more than one year prior to the filing of the patent application. *Scaltech, Inc. v. Retec/Tetra, L.L.C.,* 269 F.3d 1321, 1327-28 (Fed. Cir. 2001). "[C]laims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *SmithKline*

*Diagnostics v. Helena Laboratories Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988). Anticipation is generally a question of fact but it may be decided on summary judgment if the record reveals no genuine issue of material fact. *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.,* 609 F.3d 1345, 1349 (Fed. Cir. 2010).

Volkswagen asserts that years before the April 1997 filing date of the application leading to the patent in suit, Audi sold vehicles in the United States containing the maintenance alert system described in claims 1 and 5 of the '408 patent. The owner's manual of the 1995 Audi A6 vehicle and the owner's manual for the 1995 Volvo 850 both describe this maintenance alert system. Volkswagen argues that these references constitute invalidating prior art. Volkswagen states that the 1984-1990 BMW 3 Series vehicles offered for sale and sold well before the April 1997 filing date of the '408 patent contain a service indicator that provides notification to the driver when maintenance is required. The Service Manual for the 1984-1990 BMW 3 Series Service was published in 1991. The 1984-1990 BMW 3 Series and the Service Manual for this series constitute prior art according to Volkswagen as to claims 7 and 10 of the '408 patent. As to claim 2 of the '408 patent, Volkswagen asserts that the Caterpillar, Inc. patent, U.S. Patent No. 5,642,284 ("'284 patent"), issued from an application filed on August 12, 1994, also constitute prior art.

Volkswagen submitted the Declarations of Susan Smith and Dieter Loersch, along with various exhibits including the service manuals noted above, to support its Motion for Summary Judgment.

Service Reminder alleged in its Complaint that Volkswagen's Service Interval Extension system infringes claims 1, 2, 5, 7 and 10 of the '408 patent. Service Reminder asserts that claim 1 is the only independent claim accused of being infringed and because claims 2, 5, 7 and 10 all

10

depend from claim 1, the analysis as to claim 1 is dispositive on the invalidity based on anticipation. In its response, Service Reminder identifies four limitations in claim 1 of the '408 patent which it argues none of the references identified as prior art by Volkswagen anticipate the invention of the '408 patent. Each of the four limitations are in turn addressed below.

### 2. Housing for Containing Components

Claim 1 of the '408 patent states, "a housing for containing components associated with the device." Service Reminder claims that this limitation renders the claimed device "a self contained maintenance alert device which can be installed into a vehicle." (Resp., p. 4) Service Reminder argues that none of the four cited prior art references disclosed a housing or a self contained alert device which can be installed into a vehicle. Service Reminder claims that the Audi, BMW and Volvo references merely disclose display devices included in a dashboard instrument cluster, which is not a housing.

Volkswagen cites Loersch's Declaration indicating that the components of the service indicator are contained in the Audi A6's instrument cluster. (Loersch Decl., ¶ 6) Loersch's Supplemental Declaration further states that during the 1980s and the 1990s, it was standard in the automotive industry to locate the instruments displayed in the vehicle dashboard in an instrument cluster with a housing that surrounded and protected the individual instruments and components. (Supp. Loersch Decl., ¶ 3) Loersch indicates that the 1995 Audi A6 service indicator components were enclosed within the instrument cluster that faced the driver and also included a plastic housing that extended behind the dashboard and enclosed the components of the service indicator system, which included a microprocessor and memory. (Supp. Loersch Decl., ¶ 5)

Volkswagen also asserts that the instrument clusters in the 1984-1990 BMW 3 Series, the

1995 Volvo 850 Owner's Manual and the Caterpillar '284 patent, all include housings or structure that enclose the service indicator components or dashboard instruments. (Loersch Decl., ¶¶ 7-8, 10; Smith Decl., Ex. 3)

Volkswagen has submitted sufficient evidence to support its claim that the prior art, including the 1995 Audi A6, 1984-1990 BMW 3 Series, the 1995 Volvo 850 and the Caterpillar '284 patent include housings or structure that enclose the service indicator components asserted in claim 1 of the '408 patent states. Service Reminder, other than arguing that the prior art referenced by Volkswagen did not contain this limitation asserted in claim 1, did not submit evidence to rebut Volkswagen's submissions. There is no genuine issue of material fact that the limitation in claim 1, "a housing for containing components associated with the device," was anticipated in the prior art referenced by Volkswagen.

### 3. Wiring Harness for Connecting the Processor to Plurality of Signal Sources

Claim 1 of the '408 patent asserts, "a wiring harness for connecting the processor to a plurality of signal sources." Service Reminder argues that while the connection of wires may be inherent in the cited references by Volkswagen, there is nothing in any of the four prior art references to suggest that these wires are bound together into harnesses.

Volkswagen cites the Loersch Declaration stating that the service indicator is electrically connected to certain signal sources which convey information such as distance and time to the service indicator in the Audi A6 1995 system wiring diagram. (Loersch Decl., ¶ 6) The Supplemental Declaration further states that the wiring harness connectors, which group multiple individual wire leads together into a single connector unit, have been and are standard equipment in the automotive industry for interconnecting electrical components of the vehicle. (Supp. Loersch

Decl., ¶ 7) The signals providing information to the 19954 Audi A6 Service Indicator components were also received through wiring harness connectors located in the rear and side portions of the instrument cluster housing, in a manner similar to the BMW and Volvo systems. (Supp. Loersch Decl., ¶¶ 9, 10)

Volkswagen has submitted sufficient evidence to support its claim that the prior art, including the 1995 Audi A6, 1984-1990 BMW 3 Series, the 1995 Volvo 850 and the Caterpillar '284 patent include wiring harness for connecting electrical components of the vehicle asserted in claim 1 of the '408 patent. Service Reminder merely argues that the prior art referenced by Volkswagen did not contain this limitation asserted in claim 1 without submitting evidence to rebut Volkswagen's submissions. There is no genuine issue of material fact that the limitation in claim 1, "a wiring harness for connecting the processor to a plurality of signal sources," was anticipated in the prior art referenced by Volkswagen.

### 4. Maintenance Rules Applied Against The Period of Continues Operating Time

Service Reminder asserts that claim 1 of the '408 patent recites that the maintenance rules are applied against "the period of continuous operating time" of the engine. Service Reminder argues that by utilizing continuous operating time–the total amount of time the engine has been operating–the '408 patent can provide alerts for different service requirements at different periods of engine run time. Service Reminder claims that the systems disclosed in the Audi, BMW and Volvo references reset their systems after each servicing, therefore, these systems do not keep track of a "continuous operating time" period, but rather track only the period since the last service. Service Reminder claims that the system disclosed in the Audi reference monitors "elapsed calendar time," not "operating time." As to the Caterpillar patent, Service Reminder argues that the patent

13

does not monitor "operating time" at all but calculates "engine hours" based on fuel and oil consumption and resets after maintenance. Service Reminder claims that the Caterpillar patent does not monitor the odometer, therefore, the maintenance rules in the Caterpillar patent does not apply the maintenance rules against the mileage information as required by claim 1 of the '408 patent.

Volkswagen argues that claim 1 requires a device to monitor "a" period of continuous operating time. Volkswagen asserts that in addition to calendar time, the prior art encompasses calendar operating time and engine running time. "It is well known, however, that mileage and time are not the only relevant factors that determine maintenance intervals." (Supp. Loersch Decl., Ex. B) Although the Audi A6 Owner's Manual indicates that the maintenance rule measures calendar time, it also applies the maintenance rules against the mileage information, such as 12 months or 15,000 miles, which occurs first. (Supp. Loersch Decl., ¶ 13 and Ex. A; Loersch Decl., ¶¶ 5-6) The 1995 Volvo 850 also applies the maintenance rules against operating time and the mileage operation. (Loersch Decl., ¶ 10; Loersch Supp. Decl, ¶ 15 and Ex. D) The BMW Service Indicator contains a processor which calculates service reminder information based on inputs including milage and time. (Loersch Dec., ¶ 8; Loersch Supp. Decl., ¶ 12 and Ex. B) The Caterpillar '284 patent, as conceded by Service Reminder, measures engine hours, in addition to vehicle miles in between maintenance requirements. (Smith Decl., Ex. 3, '284 patent)

The Court's construction of this claim limitation is "the cumulative or non-cumulative period of time that has elapsed from the time the vehicle ignition is turned on until it is turned off." Even though some of the prior art references apply maintenance rules to calendar time, the prior art references also apply the maintenance rules to operating time, which also includes mileage. As conceded by Service Reminder the '284 Caterpillar patent applies maintenance rules to mileage.

14

The limitation in claim 1 applying the maintenance rules against the period of continuous operating time and the milage information was anticipated in the prior art references in the Audi, Volvo, BMW and '284 Caterpillar patent. Volkswagen has supported its summary judgment motion on this issue by submitting the Loersch Declaration and the various exhibits noted above. Service Reminder has not submitted evidence that creates a genuine issue of material fact.

### 5. Memory Stores Information Relating to the Mobile and Immobile Object

Service Reminder's final argument is that the prior art referenced by Volkswagen does not include the claim 1 limitation which states that memory stores "information relating to the mobile and immobile object." Service Reminder argues that none of the four cited references teach or otherwise disclose any storage of replacement part information.

Volkswagen cites the Loersch Declaration to show that the service indicator of the 1995 Audi A6 service indicator includes a memory coupled to the microprocessor for storing information relating to the vehicle and maintenance thereof. (Loersch Dec., ¶ 6) The Loersch Declaration further asserts that the maintenance alert systems of BMW, Audi and Volvo utilize a memory to store information concerning the operation of, and the maintenance required for the vehicle. (Supp. Loersch Decl., ¶¶ 14-15) Volkswagen refers to the Caterpillar '284 patent which indicates that upon performing a periodic maintenance of an engine, including an oil change and filter, the total number of miles accumulated and the total amount of fuel consumed are stored in the storage device and that the random access memory can include both volatile and non-volatile memory elements enabling the memory to store both transitional and static data. (Smith Decl., Ex. 3, '284 patent, cols. 2-4)

Based on the submissions by Volkswagen, each of the Audi, BMW, Volvo and Caterpillar prior art devices store vehicle information such as accumulated mileage, engine operating hours and

time or mileage thresholds for generating maintenance alerts which anticipated the claim 1 limitation in the '408 patent of memory which stores "information relating to the mobile and immobile object." No evidence creating a genuine issue of material fact has been submitted by Service Reminder.

### 6. Summary

The Court finds that each of the limitations Service Reminder asserts were not anticipated in the prior art referenced by Volkswagen were in fact anticipated in those references. Volkswagen supported its summary judgment motion and Service Reminder did not submit sufficient evidence to create a genuine issue of material fact. Summary judgment is granted on Volkswagen's motion based on anticipation by the prior art referenced. Service Reminder's Complaint is dismissed.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Service Reminder's proposed construction is GRANTED and ADOPTED as to claim 1.

IT IS FURTHER ORDERED that Volkswagen's Motion for Summary Judgment (**Doc. No. 16, filed 10/15/2010**) is GRANTED.

IT IS FURTHER ORDERED that the Complaint is DISMISSED.

IT IS FURTHER ORDERED and DECLARED that the asserted claims by Service Reminder are invalid and Judgment is entered in favor of Volkswagen on its Counterclaim.


Dated: September 29, 2011        S/Denise Page Hood
                                 DENISE PAGE HOOD
                                 UNITED STATES DISTRICT JUDGE

**10-12201 Service Reminder, LLC v. Volkswagen Group of America, Inc.**
**Opinion & Order Regarding Claim Construction, etc.**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 29, 2011, by electronic and/or ordinary mail.

                S/Julie Owens
              Case Manager, (313) 234-5160